```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

SCOTT J. HURLEY,

         Plaintiff,   **No. 6:17-cv-06031(MAT)**
                **DECISION AND ORDER**
    -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

         Defendant.

## INTRODUCTION

Scott J. Hurley ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner"),[1] denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On March 4, 2013, Plaintiff protectively filed for SSI; on March 5, 2013, Plaintiff filed an application for DIB. In both applications, Plaintiff alleged an onset date of November 26, 2011,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

and alleged disability based on a history of a heart attack, liver failure (diagnosed November 2010), shortness of breath upon activity, and memory problems. (T.76).[2] These claims were denied initially on July 2, 2013, and Plaintiff requested a hearing. A hearing was conducted on February 17, 2015, in Rochester, New York by an administrative law judge ("ALJ"). Plaintiff appeared with his attorney and testified. An impartial vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision (T.14-19) on April 24, 2015, finding that Plaintiff, notwithstanding his severe impairments of cirrhosis of the liver and alcohol abuse in remission, has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations: he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; and is limited to simple tasks. Based on the VE's testimony, the ALJ determined that Plaintiff cannot perform any of his past relevant work (automobile self-service station attendant and groundskeeper, industrial/commercial, both performed at the light exertional level). However, the VE identified other jobs that exist in significant numbers that a person with Plaintiff's RFC and

---

[2] Citations to "T." in parentheses refer to pages from the certified transcript of the administrative record. (Dkt #9).

vocational profile can perform, including the positions of addresser and order clerk. Therefore, the ALJ found that Plaintiff has not been under a disability from November 26, 2011, through the date of his decision.

The Appeals Council denied Plaintiff's request for review on November 18, 2016, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of

review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

**Plaintiff's Point I: RFC Not Supported by Substantial Evidence Due to Conflicts with the Medical Opinions Relied on by the ALJ**

In the present case, as the ALJ acknowledged, there were no medical opinions from treating providers. Consultative physician Dr. Karl Eurenius examined Plaintiff on April 26, 2013, and issued a report. (T.461-63). Plaintiff reported a history of liver failure; he had been a heavy drinker and had been brought to the hospital with dizziness, ascites, and jaundice for which he underwent ascites drainage. A CT scan of his abdomen showed inflamed appendix, portal hypertension, and varices,[3] and he was told he would probably need a liver transplant. Since discharge, Plaintiff's complaints included very poor short-term memory and shortness of breath on exertion including shortness of breath with less than one block of walking or one flight of stairs. Plaintiff reported he cooked two or three times a week; cleaned as needed; did laundry twice a week; shopped once a week; dressed and showered

---

[3] In individuals who have cirrhosis, high blood pressure in the veins that carry blood from the intestines to the liver (portal hypertension) causes, inter alia, enlarged portal veins (varices), which attempt to accommodate blocked blood flow through the liver. See https://www.webmd.com/a-to-z-guides/tc/variceal-bleeding-as-a-complication-of-cirrhosis-topic-overview (last accessed Mar. 9, 2018).

daily; and spent his days watching television and listening to the radio. On examination, Plaintiff had a normal gait and could heel-toe walk. Plaintiff could squat only half-way with some pain felt in his abdomen. He had no jaundice but multiple spider angiomata on his shoulders. Dr. Eurenius noted that Plaintiff's abdomen was somewhat distended and "very tense;" he could not feel Plaintiff's liver or spleen. There was "some shifting" and "dullness" but no bruits. Plaintiff had full lumbar flexion, extension and rotation, although full flexion did cause pain in the mid-abdomen. Plaintiff's straight leg raise test at 60 degrees bilaterally caused pain in the abdomen. Dr. Eurenius diagnosed probable end-stage liver disease with ascites, status post-alcohol and liver disease indicating a transplant candidate (per Plaintiff). For his medical source statement, Dr. Eurenius opined that Plaintiff was "limited in all exertional activities, including walking, climbing, lifting and carrying due to shortness of breath of uncertain etiology;" "moderately limited in lifting, carrying and kneeling due to ascites;[4]" and "may be moderately limited in following directions due to poor short-term memory." (T.463).

---

[4] Ascites are a common condition in individuals with severe liver disease and occurs when pressure builds up in the veins of the liver, blocking blood flow in the liver, which, over time prevents the kidneys from removing excess salt from the body. This, in turn, causes fluid to build and to cause the abdomen to swell and protrude. Symptoms include shortness of breath, nausea, indigestion, and vomiting.
See https://www.webmd.com/digestive-disorders/ascites-medref (last accessed Mar. 9, 2018).

On July 1, 2013, State agency review consultant Dr. Jack Bankhead reviewed Plaintiff's medical records and issued a physical RFC assessment. (T.76-86). In the section headed, "Findings of Fact and Analysis of Evidence," Dr. Bankhead noted that Plaintiff was a young man but with significant liver disease and a prior heart attack. He had been sober since November 2010, and his liver disease although advanced, was stable, and he was not on a transplant list at present. Dr. Bankhead's findings were that Plaintiff has significant portal hypertension and abdominal firmness with distention, which impact full lumbar range of motion and breathing; and "reasonable" allegations of fatigue. Dr. Bankhead indicated that based on these findings, Plaintiff is "capable of walking/standing slightly less than 2 hours," sitting for 6 hours, and lifting less than 10 pounds occasionally. (T.80).

However, in the section of Dr. Bankhead's report headed, "Residual Functional Capacity," Dr. Bankhead indicated that Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; sit for a total of about 6 hours in an 8-hour day; stand and/or walk for a total of about 6 hours in an 8-hour day with unlimited ability to push and pull; can frequently climb ramps, stairs, balance, stoop, kneel and crouch; and can occasionally climb ladders, ropes, scaffolds and crawl; should avoid concentrated exposure to extreme cold, heat, wetness,

humidity, fumes, odors, dusts, gases, poor ventilation and hazards (machinery/heights); but can have unlimited noise and vibration exposure. (T.82-83).

The ALJ afforded Dr. Bankhead's opinion "some weight" and Dr. Eurenius's opinion "significant weight." With regard to Dr. Eurenius, the ALJ explained,

> I afford significant weight to his opinion on the claimant's exertional limitations. This portion of the opinion is consistent with his examination findings, showing the claimant experiences some abdominal pains with movements of the spine and with movements like squatting. In addition, Dr. Eurenius' opinion that the claimant has moderate limitations due to poor short-term memory is consistent with the claimant's allegations. . . . .

(T.16). Plaintiff argues that Dr. Eurenius's opinion contradicted the RFC assessment and was, in part, too vague to constitute substantial evidence. Therefore, Plaintiff argues, the ALJ improperly substituted his own lay opinion as the basis for the RFC, rather than relying a medical opinion.

As discussed further below, the Court finds that Dr. Eurenius's opinion was vague and does not constitute substantial evidence to support the RFC issued by the ALJ. As an initial matter, the Court notes that the ALJ's decision lacks a function-by-function assessment of Plaintiff's functional limitations before. SSR 96-8p directs that an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis;" it is "[o]nly after that may RFC be expressed in terms of the exertional levels of work . . . ." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). This analysis requires assessing a claimant's ability "to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately[.]" Id. (quoting SSR 96-8p, 1996 WL 374184, at *5). Here, the ALJ failed to make such a function-by-function finding. Nor did he mention any of the exertional requirements of light work. Cf. Ferguson v. Colvin, No. 1:12-CV-0033 MAT, 2014 WL 3894487, at *8 (W.D.N.Y. Aug. 8, 2014) (reversing based on failure to follow SSR 96-8p's instruction to perform a function-by-function analysis; even though the ALJ mentioned the lifting requirements of light work, and acknowledged that a job is in the light category when it requires a good deal of walking and standing, the ALJ did not discuss claimant's documented limitations in these exertional areas). "Because a failure to separately assess a claimant's capacity to perform the relevant strength demands can 'result in the adjudicator overlooking some of an individual's limitations or restrictions[,]' which can in turn 'lead to an incorrect use of an exertional category . . . and an erroneous finding that the individual is not disabled,' SSR 96-8p, 1996 WL 374184, at *4, this error is a . . . basis for remand." Ferguson, 2014 WL 3894487, at

*8 (citing McClaney v. Astrue, No. 10-CV-5421(JG)(JO), 2012 WL 3777413, at *11 (E.D.N.Y. Aug. 10, 2012)).

Turning to the ALJ's analysis of the opinion evidence in support of the RFC assessment, the Court notes that under SSR 83-10, RFC is defined as follows: "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s). . . ." SSR 83-10, 1983 WL 31251, at *7 (S.S.A. 1983). SSR 83-10 goes on to define "[e]xertional [a]ctivity" as "[o]ne of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of work." Id. at *5. According to Dr. Eurenius, Plaintiff is "limited," to an unspecified degree, "in *all* exertional activities, including walking, climbing, *lifting and carrying* due to shortness of breath of uncertain etiology[.]" (Id. (emphases supplied)). However, Dr. Eurenius then gives a quantified limitation regarding two of the previously identified activities, noting that Plaintiff is "*moderately* limited in *lifting, carrying* and kneeling due to ascites." (Id. (emphases supplied)). The Commissioner's regulations do not define the term "moderate." E.g., Figueroa v. Astrue, No. ED CV 10-385-E, 2010 WL 3789576, at *2 n. 3 (C.D. Cal. 2010) (citation omitted).

The Commissioner argues that Dr. Eurenius's opinion is reflected in the RFC finding limiting Plaintiff to the performance

of sedentary work—the least exertionally demanding level of work. Plaintiff's argues that Dr. Eurenius's opinion is highly ambiguous and vague. The Court agrees with Plaintiff. It is unclear whether Dr. Eurenius's opinion is consistent with the RFC because it does not quantify the doctor's limitations on the main exertional activities. See, e.g., Andrews v. Colvin, No. 13 CIV.2217 RWS, 2014 WL 3630668, at *11 (S.D.N.Y. July 22, 2014) (consultative physician stated Plaintiff had "moderate limitations to squatting, lifting and carrying, pushing and pulling secondary to back pain"; court found "the ALJ erred in relying on the doctor's vague, non-specified notes regarding Plaintiff's ability to squat, lift, carry, push and pull") (citing Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013)); Burton v. Colvin, No. 6:12-CV-6347 MAT, 2014 WL 2452952, at *10 (W.D.N.Y. June 2, 2014) ("Dr. Toor's assessment of a "mild-to-moderate" limitation on a whole range of different physical activities [i.e., sitting, standing, walking, bending, and lifting], without more, is too vague to be meaningful or to provide substantial evidence to support the ALJ's RFC analysis.") (citing Minor v. Astrue, No. 11–CV–06556–MAT, 2012 WL 5948952, *4 (W.D.N.Y. Nov.28, 2012) ("Although [the consultative examiner] gave the opinion that [claimant] had only 'moderate' limitations in her lumbar spine mobility and 'mild' limitations in prolonged standing, walking, and using stairs, inclines and ladders, these opinions do not constitute 'substantial evidence'") (citing Curry v. Apfel, 209

F.3d 117, 123 (2d Cir. 2000) (holding that opinions from consultative examiner that a claimant has "mild" or "moderate" limitations, "without additional information", are "so vague as to render [the opinions] useless"); other citation omitted)). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quotation omitted).

It is also unclear how the ALJ weighed Dr. Bankhead's opinion. With regard to Dr. Bankhead, the ALJ referenced the "Residual Functional Capacity" portion of the report (T.82-83), and accorded it "some weight" because it "is not generally consistent with the overall medical evidence of record" Dr. Bankhead "did not treat or examine the claimant." (T.17). As noted above, Dr. Bankhead's notations regarding Plaintiff's limitations in standing/walking and lifting/carrying appear to be internally inconsistent, depending on the section of the report in which they are located. (Contrast T.80 with T.82-83).

Remand is required for clarification of Dr. Eurenius's opinion and Dr. Bankhead's opinion, as well as performance of a function-by-function assessment under SSR 96-8p.

**Plaintiff's Point II: Credibility Assessment Not Supported by Substantial Evidence**

Plaintiff argues that the ALJ provided an insufficient evaluation of his credibility since the decision contains boilerplate statements about why Plaintiff's daily activities

undermined his subjective complaints. The ALJ simply stated that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible for the reasons discussed in the decision. The three reasons offered by the ALJ were that Plaintiff engaged in daily activities such as self-care and completing household chores; he had not received any medical treatment in approximately two years despite having medical insurance; and the record was devoid of medical opinions from treating or examining physicians indicating that Plaintiff "was disabled." (T.17).

"If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted). Although a claimant's daily activities are relevant in evaluating his complaints of pain, 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i), Plaintiff "was performing these 'daily activities' at home, on [his] own schedule—not in the context of a competitive work environment where

[he] would not be able to take breaks or rest as needed." However, Plaintiff was performing these "daily activities" at home, on her own schedule-not in the context of a competitive work environment where she would not be able to take breaks or rest as needed." Burton v. Colvin, No. 6:12-CV-6347 MAT, 2014 WL 2452952, at *12 (W.D.N.Y. June 2, 2014). Furthermore, Plaintiff did not testify that he did laundry or housework every day, and he indicated that he had help from his mother and brother. In any event, "performance of daily activities is not necessarily a clear and convincing reason to discredit a [claimant's] testimony." Provencio v. Astrue, No. CV 11-141-TUC-BPV, 2012 WL 2344072, at *12 (D. Ariz. June 20, 2012) (citing Webb v. Barnhart, 433 F.3d 683, 687–88 (9th Cir. 2005)); see also Snyder v. Barnhart, 212 F. Supp.2d 172, 179 (W.D.N.Y. 2002) (finding error where "the ALJ focused heavily on the [claimant]'s admitted daily capabilities, including driving herself to appointments, cooking for her family, doing light laundry, and grocery shopping with the aid of her fiancé in carrying the grocery bags"). A claimant "'need not be an invalid to be found disabled' under the Social Security Act." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988)). The Court finds that the ALJ failed to explain how, in a manner sufficient to allow for meaningful appellate review, Plaintiff had the ability to engage in any of these activities for sustained periods comparable to

those required to hold a sedentary job. Starzynski v. Colvin, No. 1:15-CV-00940(MAT), 2016 WL 6956404, at *4 (W.D.N.Y. Nov. 29, 2016) (citing Meadors v. Astrue, 370 F. App'x 179, 184 (2d Cir. 2010) (unpublished opn.) ("Because we agree that the ALJ did not properly evaluate the [the claimant]'s testimony regarding her pain, we are unable to give his calculation of [the claimant]'s RFC meaningful review.").

With regard to Plaintiff's limited recent medical treatment, the ALJ failed to consider Plaintiff's explanation for this. Plaintiff testified he had not sought any medical treatment in a couple of years "because two years ago, [he] was pretty much exactly the same as [he was] now." (T.40).[5] He further testified that when he last obtained medical treatment, he was not told about any further suggested treatment and was instructed to return if his symptoms changed. (T.42).

Lastly, the absence of medical opinions that Plaintiff "is disabled" is a red herring. Had there been medical opinions asserting that Plaintiff "is disabled," and had Plaintiff argued that they were entitled to significant weight, the Commissioner certainly would have argued that, as statements regarding the ultimate question reserved to the Commissioner, they were entitled to no special significance. See, e.g., Newbury v. Astrue, 321 F.

---

[5] This is corroborated by State agency review consultant Dr. Bankhead's observation that Plaintiff's liver disease, although significant and severe, was "stable." (T.80).

App'x 16, 18 (2d Cir. 2009) (unpublished opn.) ("[Treating source] Dr. Grace's conclusions that Newbury was 'disabled' and lacked 'residual functional capacity' are not entitled to controlling weight.") (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability. . . .")).

**CONCLUSION**

For the reasons discussed above, the Commissioner's decision is unsupported by substantial evidence and contains legal errors. Therefore, Plaintiff's motion for judgment on the pleadings is granted to the extent the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. The Court directs that these pleadings be completed within six months of the date of this decision. The Commissioner's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

                                        S/Michael A. Telesca
                                    _____
                                       HON. MICHAEL A. TELESCA
                                       United States District Judge

Dated:    March 12, 2018
           Rochester, New York.